UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Patrick Hageman, Julie Engel, Susanne Smith, Gary Stroick, Bruce McKeeman, Brenda Dammann, Charlaine Ramsay, Lori Holm, Christopher Gardocki, Paul Jacobsen, Cyrus Vahhaji, Patrick Graven, Patricia Saign, and John Hetterick, for and on behalf of themselves and other persons similarly situated, | Civil No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| Accenture, LLP, | **ADEA Collective Action** |
| Defendant. | **Demand for Jury Trial** |

Plaintiffs Patrick Hageman, Julie Engel, Susanne Smith, Gary Stroick, Bruce McKeeman, Brenda Dammann, Charlaine Ramsay, Lori Holm, Christopher Gardocki, Paul Jacobsen, Cyrus Vahhaji, Patrick Graven, Patricia Saign, and John Hetterick, for and on behalf of themselves and other persons similarly situated (collectively "Plaintiffs"), for their Complaint against Accenture, LLP ("Accenture"), state and allege as follows:

## PARTIES AND JURISDICTION

1.    Plaintiff Patrick Hageman ("Hageman") resides in St. Paul, Minnesota.  Hageman was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota.  He was notified of his termination on April 15, 2009, after more than 26 years of service.  Hageman was then 55 years old.

2.    Plaintiff Julie Engel ("Engel") resides in Prior Lake, Minnesota.  Engel was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy

campus in Richfield, Minnesota. She was notified of her termination on April 15, 2009, after more than 23 years of service. Engel was then 43 years old.

3.     Plaintiff Susanne Smith ("Smith") resides in Bloomington, Minnesota. Smith was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. She was notified of her termination on April 15, 2009, after more than 22 years of service. Smith was then 60 years old.

4.     Plaintiff Gary Stroick ("Stroick") resides in St. Louis Park, Minnesota. Stroick was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. He was notified of his termination on May 18, 2009, after more than 10 years of service. Stroick was then 54 years old.

5.     Plaintiff Bruce McKeeman ("McKeeman") resides in Mound, Minnesota. McKeeman was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. He was notified of his termination on April 15, 2009, after more than 10 years of service. McKeeman was then 60 years old.

6.     Plaintiff Brenda Dammann ("Dammann") resides in Eden Prairie, Minnesota. Dammann was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. She was notified of her termination on April 15, 2009, after more than 10 years of service. Dammann was then 48 years old.

7.     Plaintiff Charlaine Ramsay ("Ramsay") resides in Minneapolis, Minnesota. Ramsay was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. She was notified of her termination on April 15, 2009, after more than 9 years of service. Ramsay was then 60 years old.

8.      Plaintiff Lori Holm ("Holm") resides in Minneapolis, Minnesota. Holm was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. She was notified of her termination on April 15, 2009, after more than 9 years of service. Holm was then 50 years old.

9.      Plaintiff Christopher Gardocki ("Gardocki") resides in Maple Plain, Minnesota. Gardocki was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. He was notified of his termination on April 15, 2009, after more than 9 years of service. Gardocki was then 53 years old.

10.     Plaintiff Paul Jacobsen ("Jacobsen") resides in New Brighton, Minnesota. Jacobsen was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. He was notified of his termination on April 15, 2009, after more than 8 years of service. Jacobsen was then 47 years old.

11.     Plaintiff Cyrus Vahhaji ("Vahhaji") resides in Minneapolis, Minnesota. Vahhaji was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. He was notified of his termination on April 15, 2009, after more than 8 years of service. Vahhaji was then 45 years old.

12.     Plaintiff Patrick Graven ("Graven") resides in Excelsior, Minnesota. Graven was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. He was notified of his termination on April 15, 2009, after more than 6 years of service. Graven was then 45 years old.

13.     Plaintiff Patricia Saign ("Saign") resides in Apple Valley, Minnesota. Saign was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy

campus in Richfield, Minnesota. She was notified of her termination on April 15, 2009, after more than 3 years of service. Saign was then 64 years old.

14.     Plaintiff John Hetterick ("Hetterick") resides in Burnsville, Minnesota. Hetterick was employed by Accenture to work in the Information Technology (IT) Department at the Best Buy campus in Richfield, Minnesota. He was notified of his termination on April 15, 2009, after almost 2 years of service. Hetterick was then 51 years old.

15.     Upon information and belief, Defendant Accenture, LLP is an Illinois limited liability partnership and is a wholly-owned subsidiary of Accenture, Ltd. Accenture conducts business in Minnesota through an office located in Minneapolis, Minnesota.

16.     Accenture is an employer within the meaning of the Federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.* and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01, *et seq.*

17.     This action is brought under the ADEA, 29 U.S.C. § 621, *et. seq.,* for and on behalf of the above-named Plaintiffs and other persons similarly situated who may opt into the action. This action is also brought under the MHRA.

18.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are pendent to and part of the same case or controversy as that giving rise to the Plaintiffs' ADEA claims.

19.     Venue of this action in the United States District Court for the District of Minnesota is proper pursuant to 28 U.S.C. § 1391(c) because the events giving rise to the Plaintiffs' claims occurred in the District of Minnesota.

## ADMINISTRATIVE CHARGES AND PROCEEDINGS

20.     On or about October 21, 2009, Plaintiff Hageman timely filed a class-wide administrative charge with the U.S. Equal Employment Commission ("EEOC") which alleged among other things that: (a) Accenture was engaging in a pattern or practice of age discrimination against himself and other similarly situated older employees; (b) his termination was part of a class-wide pattern or practice of age-based terminations, demotions and forced retirements and resignations in the IT Department that began in 2009 and was continuing; (c) Accenture had been hiring and promoting younger persons throughout this same period; and (e) he was filing the charge on behalf of himself and all similarly situated employees of Accenture who had worked at the Best Buy campus and who had been terminated, demoted, or forced to retire or resign their employment in whole or in part due to their ages.

21.     On or about September 30, 2009, Plaintiff Engel timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture discriminated against her and other similarly situated employees on the basis of age in violation of the ADEA by, among other things, terminating Engel, and by terminating, demoting, or forcing the resignation or retirement of other older employees.

22.     On or about September 29, 2009, Plaintiff Smith timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture discriminated against her and other similarly situated employees on the basis of age in violation of the ADEA by, among other things, terminating Smith, and by terminating, demoting, or forcing the resignation or retirement of other older employees.

23.     On or about September 28, 2009, Plaintiff Stroick timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture

discriminated against him and other similarly situated employees on the basis of age in violation

of the ADEA by, among other things, terminating Stroick, and by terminating, demoting, or

forcing the resignation or retirement of other older employees.

24.     On or about October 5, 2009, Plaintiff McKeeman timely filed a class-wide

administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture

discriminated against him and other similarly situated employees on the basis of age in violation

of the ADEA by, among other things, terminating McKeeman, and by terminating, demoting, or

forcing the resignation or retirement of other older employees.

25.     On or about September 29, 2009, Plaintiff Dammann timely filed a class-wide

administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture

discriminated against her and other similarly situated employees on the basis of age in violation

of the ADEA by, among other things, terminating Dammann, and by terminating, demoting, or

forcing the resignation or retirement of other older employees.

26.     On or about September 29, 2009, Plaintiff Ramsay timely filed a class-wide

administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture

discriminated against her and other similarly situated employees on the basis of age in violation

of the ADEA by, among other things, terminating Ramsay, and by terminating, demoting, or

forcing the resignation or retirement of other older employees.

27.     On or about October 5, 2009, Plaintiff Holm timely filed a class-wide

administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture

discriminated against her and other similarly situated employees on the basis of age in violation

of the ADEA by, among other things, terminating Holm, and by terminating, demoting, or

forcing the resignation or retirement of other older employees.

28. On or about September 30, 2009, Plaintiff Gardocki timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture discriminated against him and other similarly situated employees on the basis of age in violation of the ADEA by, among other things, terminating Gardocki, and by terminating, demoting, or forcing the resignation or retirement of other older employees.

29. On or about September 29, 2009, Plaintiff Jacobsen timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture discriminated against him and other similarly situated employees on the basis of age in violation of the ADEA by, among other things, terminating Jacobsen, and by terminating, demoting, or forcing the resignation or retirement of other older employees.

30. On or about September 28, 2009, Plaintiff Vahhaji timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture discriminated against him and other similarly situated employees on the basis of age in violation of the ADEA by, among other thing, terminating Vahhaji, and by terminating, demoting, or forcing the resignation or retirement of other older employees.

31. On or about October 30, 2009, Plaintiff Graven timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture discriminated against him and other similarly situated employees on the basis of age in violation of the ADEA by, among other things, terminating Graven, and by terminating, demoting, or forcing the resignation or retirement of other older employees.

32. On or about October 5, 2009, Plaintiff Saign timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture discriminated against her and other similarly situated employees on the basis of age in violation

of the ADEA by, among other things, terminating Saign, and by terminating, demoting, or forcing the resignation or retirement of other older employees.

33.     On or about October 23, 2009, Plaintiff Hetterick timely filed a class-wide administrative charge with the EEOC which, like Hageman's charge, alleged that Accenture discriminated against him and other similarly situated employees on the basis of age in violation of the ADEA by, among other things, terminating Hetterick, and by terminating, demoting, or forcing the resignation or retirement of other older employees.

34.     Each of the fourteen above-named Plaintiffs hereby consents to become a party plaintiff in this action.

## FACT ALLEGATIONS

35.     Accenture, in conjunction with its parent company, Accenture, Ltd., engaged in a pattern or practice of age discrimination against its older Information Technology ("IT") employees working at the Best Buy campus in Richfield, Minnesota.  The above-named Plaintiffs in this action and other similarly situated employees were subject to and the victims of Accenture's pattern or practice of age discrimination.

36.     Accenture publicly emphasizes its "young, dynamic work environment" in its recruitment of new employees worldwide.  It states that at any of its offices one will meet "new graduates and young professionals."

37.     Accenture states publicly its policy that, "We believe that companies that successfully engage young workers – establishing the right balance between IT boundaries and IT freedoms – are far more likely to generate breakthrough business ideas than competitors who want their workers to conform to 'old school' IT policies and procedures."

38.     Upon information and belief, Accenture required offshore applicants for its IT

positions to provide their dates of birth.

39.     As part of its pattern or practice of age discrimination, Accenture began to use performance reviews, job assignments, ratings, rankings and other measures to justify the terminations of its older IT employees.

40.     As part of its pattern or practice of age discrimination, Accenture discriminated with respect to training opportunities and job assignments, such as by giving younger employees the opportunity to learn new technologies and assigning those employees to positions where they could utilize that new technology. In contrast, Accenture did not provide the same training opportunities and job assignments to the older workers.

41.     As part of its pattern or practice of age discrimination, Accenture discriminated with respect to promotions by promoting younger employees into management positions. In contrast, Accenture excluded and/or demoted many of the older employees or took away their job duties and responsibilities.

42.     As part of its pattern or practice of discrimination, Accenture has failed to consider its older employees for employment opportunities, has refused to transfer older employees into open positions for which they were qualified, and has refused to re-hire its former employees for positions for which they were qualified.

43.     Accenture illegally took the above measures and others to classify its employees on the basis of age, and to otherwise adversely affect the employment of older IT employees and other similarly situated employees.

44.     In or about April and May 2009, as part of its pattern or practice of age discrimination, Accenture notified approximately 73 of its IT Department employees that their

employment would be terminated due to a workforce reduction, with these terminations falling

heavily on older employees while younger IT employees were disproportionately retained.

45.    According to the data distributed by Accenture at the time of these terminations,

47 of those terminated were over age 40 and the risk of termination increased significantly with

age.

46.    Upon information and belief, this pattern of age-based terminations continued

throughout 2009 and into 2010. According to data distributed by Accenture in March 2010,

about 72% of the IT employees who worked for Accenture in the Best Buy Unit were over age

40 when they were terminated between May 2009 and February 2010, the termination rate for

those over age 40 was more than twice the termination rate for those under age 40, and the risk

of termination increased significantly with age.

47.    It is believed that this pattern of age-based terminations is still continuing.

48.    Prior to and subsequent to the Plaintiffs' termination, Accenture, in conjunction

with its parent corporation, Accenture, Ltd., hired younger replacement workers, all or nearly all

of whom were under age 40, both at its domestic and foreign locations, to work as part of the IT

Department for Best Buy. Upon information and belief, these newer, younger employees were

not terminated when Plaintiffs and others were terminated.

49.    The Plaintiffs and others who were terminated often were required to train these

younger employees who would replace them to work as part of the IT Department for Best Buy.

Those new Accenture employees who resided at offshore locations were either brought to the

Best Buy location in Minnesota for their training or were otherwise trained by a Plaintiff or

others who worked at that location.

50.     On information and belief, Accenture required each of the employees it terminated from its Best Buy unit to sign and return a release of their claims they may have against Accenture before they would be paid any severance benefits.

51.     The aforesaid pattern or practice of age discrimination by Accenture was willful.

52.     The Plaintiffs are each 40 years of age or older and are within the class of persons protected against age discrimination by the ADEA and the MHRA.

53.     The Plaintiffs are among the current employees and former employees of Accenture who have been adversely affected by the aforesaid pattern or practice of age discrimination.

54.     Upon information and belief, this pattern or practice of age discrimination by Accenture is continuing.

**Patrick Hageman**

55.     Hageman was employed by Musicland on or about April 25, 1983 to work in its IT Department.

56.     In or about February 2001, Best Buy acquired Musicland and Hageman became an employee of Best Buy, performing duties within its IT Department.

57.     On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Hageman became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

58.     At the time of his termination, Hageman was employed by Accenture as a Project Manager.

59.     Hageman was well qualified for his position and performed his duties in a proper, satisfactory and competent manner.

60.     Accenture notified Hageman of his termination on or about April 15, 2009, when he was 55 years old.

**Julie Engel**

61.     Engel was employed by Best Buy in or about October 1985 to work in its IT Department.

62.     On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Engel became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

63.     At the time of her termination, Engel was employed by Accenture as an IT Project Manager.

64.     Engel was well qualified for her position and performed her duties in a proper, satisfactory and competent manner.

65.     Accenture notified Engel of her termination on or about April 15, 2009, when she was 43 years old.

**Susanne Smith**

66.     Smith was employed by Best Buy on or about March 23, 1987 to work in its IT Department.

67.     On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Smith became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

68.     At the time of her termination, Smith was employed by Accenture as a Project Manager.

69.     Smith was well qualified for her position and performed her duties in a proper, satisfactory and competent manner.

70.     Accenture terminated Smith's employment on or about April 15, 2009, when Smith was 60 years old.

**Gary Stroick**

71.     Stroick was employed by Best Buy on or about August 31, 1998 to work in its IT Department.

72.     On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Stroick became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

73.     At the time of his termination, Stroick was employed by Accenture as Service Introduction Lead.

74.     Stroick was well qualified for his position and performed his duties in a proper, satisfactory and competent manner.

75.     Accenture notified Stroick of his termination on or about May 18, 2009, when Stroick was 54 years old.

**Bruce McKeeman**

76.     McKeeman was employed by Best Buy in or about December 1998 to work in its IT Department.

77.     On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, McKeeman became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

78.     At the time of his termination, McKeeman was employed by Accenture as a

Project Manager – Manager Disaster Recovery Care Team.

79.   McKeeman was well qualified for his position and performed his duties in a proper, satisfactory and competent manner.

80.   Accenture notified McKeeman of his termination on or about April 15, 2009, when McKeeman was 60 years old.

**Brenda Dammann**

81.   Dammann was employed by Best Buy on or about February 26, 1999 to work in its IT Department.

82.   On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Dammann became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

83.   At the time of her termination, Dammann was employed by Accenture as a Team Lead.

84.   Dammann was well qualified for her position and performed her duties in a proper, satisfactory and competent manner.

85.   Accenture notified Dammann of her termination on or about April 15, 2009, when she was 48 years old.

**Charlaine Ramsay**

86.   Ramsay was employed by Best Buy on or about May 25, 1999 to work in its IT Department.

87.   On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Ramsay became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

14

88.     At the time of her termination, Ramsay was employed by Accenture as a Team Lead.

89.     Ramsay was well qualified for her position and performed her duties in a proper, satisfactory and competent manner.

90.     Accenture notified Ramsay of her termination on or about April 15, 2009, when Ramsay was 60 years old.

**Lori Holm**

91.     Holm was employed by Best Buy on or about August 30, 1999 to work in its IT Department.

92.     On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Holm became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

93.     At the time of her termination, Holm was employed by Accenture as a Team Lead.

94.     Holm was well qualified for her position and performed her duties in a proper, satisfactory and competent manner.

95.     Accenture notified Holm of her termination on or about April 15, 2009, when Holm was 50 years old.

**Christopher Gardocki**

96.     Gardocki was employed by Musicland on or about December 20, 1999 to work in its IT Department.

97.     In or about February 2001, Best Buy acquired Musicland and Gardocki became an employee of Best Buy, performing duties within its IT Department.

98.     On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Gardocki became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

99.     At the time of his termination, Gardocki was employed by Accenture as a Network Engineer.

100.    Gardocki was well qualified for his position and performed his duties in a proper, satisfactory and competent manner.

101.    Accenture notified Gardocki of his termination on or about April 15, 2009, when he was 53 years old.

**Paul Jacobsen**

102.    Jacobsen was employed by Best Buy on or about June 30, 2000 to work in its IT Department.

103.    On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Jacobsen became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

104.    At the time of his termination, Jacobsen was employed by Accenture as an Applications/Solutions Architect – Technical Specialist.

105.    Jacobsen was well qualified for his position and performed his duties in a proper, satisfactory and competent manner.

106.    Accenture notified Jacobsen of his termination on or about April 15, 2009 when Jacobsen was 47 years old.

**Cyrus Vahhaji**

107.    Vahhaji was employed by Best Buy on or about September 24, 2001 to work in its

IT Department.

108.    On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Vahhaji became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

109.    At the time of his termination, Vahhaji was employed by Accenture as Systems Engineer.

110.    Vahhaji was well qualified for his position and performed his duties in a proper, satisfactory and competent manner.

111.    Accenture notified Vahhaji of his termination on or about April 15, 2009, when Vahhaji was 45 years old.

**Patrick Graven**

112.    Graven was engaged by Best Buy as a contractor in or about May 2001 to work in its IT Department.  In or about February 2003, Graven became employed by Best Buy and continued to work in its IT Department.

113.    On or about July 16, 2004, pursuant to an outsourcing agreement between Best Buy and Accenture, Graven became an employee of Accenture, but was still performing the same duties in the same IT Department for Best Buy at the Best Buy campus.

114.    At the time of his termination, Graven was employed by Accenture as a Software Engineer.

115.    Graven was well qualified for his position and performed his duties in a proper, satisfactory and competent manner.

116.    Accenture notified Graven of his termination on or about April 15, 2009, when he was 45 years old.

**Patricia Saign**

117.   Saign was employed by Accenture on or about April 10, 2006 to work in the IT Department at the Best Buy campus.

118.   At the time of her termination, Saign was employed by Accenture as a Domain Lead – Incident Management Team.

119.   Saign was well qualified for her position and performed her duties in a proper, satisfactory and competent manner.

120.   Accenture notified Saign of her termination on or about April 15, 2009, when Saign was 64 years old.

**John Hetterick**

121.   Hetterick was employed by Accenture on or about July 23, 2007 to work in the IT Department at the Best Buy campus.

122.   At the time of his termination, Hetterick was employed by Accenture as an Exeter WMS Support.

123.   Hetterick was well qualified for his position and performed his duties in a proper, satisfactory and competent manner.

124.   Accenture notified Hetterick of his termination on or about April 15, 2009, when Hetterick was 51 years old.

125.   Each of the above-named Plaintiffs hereby consents to become a party plaintiff in this action.

## COUNT ONE

### ADEA REPRESENTATIVE ACTION - ADEA

126.   Plaintiffs incorporate herein by reference all of the above paragraphs.

127.    This is a representative action under 29 U.S.C. §§626(b) & (c) and 29 U.S.C. § 216(b) by the above-named Plaintiffs and other similarly situated persons who opt into this action by filing the appropriate consent.

128.    As set forth more fully above, Accenture has engaged in an unlawful pattern or practice of age discrimination that has adversely affected the above-named Plaintiffs and other similarly situated present and former employees of Accenture in the IT department of Accenture at Best Buy in violation of the ADEA.

129.    The aforesaid unlawful pattern or practice of age discrimination by Accenture is in willful violation of the ADEA.

130.    The above-named Plaintiffs and others similarly situated were adversely affected by the aforesaid pattern or practice of unlawful, willful age discrimination by Accenture.

131.    By engaging in said unlawful and willful pattern or practice of age discrimination as described herein, Accenture prevented the named Plaintiffs and other similarly situated employees from obtaining the income, pension, retirement and insurance benefits, and other compensation and benefits that they otherwise would have earned and received.

132.    As a direct and proximate result of the aforesaid unlawful and willful pattern or practice of age discrimination by Accenture in violation of the ADEA, each of the Plaintiffs has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation and lost retirement benefits, insurance benefits, and other employee benefits.

**COUNT TWO**

**INDIVIDUAL AGE DISCRIMINATION CLAIMS – ADEA & MHRA**

133.    Plaintiffs incorporate herein by reference all of the above paragraphs.

134.    Accenture discriminated against Hageman because of his age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Hageman's employment in 2009 because of his age.

135.    As a direct and proximate result of Accenture's unlawful and willful age discrimination against him, Hageman has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

136.    Accenture's unlawful and willful age discrimination against Hageman was done with deliberate disregard for Hageman's rights under the MHRA and ADEA and, as a direct and proximate result, he has suffered mental anguish for which he seeks recovery under the MHRA.

137.    Accenture discriminated against Engel because of her age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Engel's employment in 2009 because of her age.

138.    As a direct and proximate result of Accenture's unlawful and willful age discrimination against her, Engel has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

139.    Accenture's unlawful and willful age discrimination against Engel was done with deliberate disregard for Engel's rights under the MHRA and ADEA and, as a direct and proximate result, she has suffered mental anguish for which she seeks recovery under the MHRA.

140.   Accenture discriminated against Smith because of her age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Smith's employment in 2009 because of her age.

141.   As a direct and proximate result of Accenture's unlawful and willful age discrimination against her, Smith has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

142.   Accenture's unlawful and willful age discrimination against Smith was done with deliberate disregard for Smith's rights under the MHRA and ADEA and, as a direct and proximate result, she has suffered mental anguish for which she seeks recovery under the MHRA.

143.   Accenture discriminated against Stroick because of his age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Stroick's employment in 2009 because of his age.

144.   As a direct and proximate result of Accenture's unlawful and willful age discrimination against him, Stroick has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

145.   Accenture's unlawful and willful age discrimination against Stroick was done with deliberate disregard for Stroick's rights under the MHRA and ADEA and, as a direct and proximate result, he has suffered mental anguish for which he seeks recovery under the MHRA.

146.   Accenture discriminated against McKeeman because of his age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating McKeeman's employment in 2009 because of his age.

147.   As a direct and proximate result of Accenture's unlawful and willful age discrimination against him, McKeeman has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

148.   Accenture's unlawful and willful age discrimination against McKeeman was done with deliberate disregard for McKeeman's rights under the MHRA and ADEA and, as a direct and proximate result, he has suffered mental anguish for which he seeks recovery under the MHRA.

149.   Accenture discriminated against Dammann because of her age in willful violation of the ADEA and MHRA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Dammann's employment in 2009 because of her age.

150.   As a direct and proximate result of Accenture's unlawful and willful age discrimination against her, Dammann has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

151.   Accenture's unlawful and willful age discrimination against Dammann was done with deliberate disregard for Dammann's rights under the MHRA and ADEA and, as a direct and proximate result, she has suffered mental anguish for which she seeks recovery under the MHRA.

152.    Accenture discriminated against Ramsay because of her age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Ramsay's employment in 2009 because of her age.

153.    As a direct and proximate result of Accenture's unlawful and willful age discrimination against her, Ramsay has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

154.    Accenture's unlawful and willful age discrimination against Ramsay was done with deliberate disregard for Ramsay's rights under the MHRA and ADEA and, as a direct and proximate result, she has suffered mental anguish for which she seeks recovery under the MHRA.

155.    Accenture discriminated against Holm because of her age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Holm's employment in 2009 because of her age.

156.    As a direct and proximate result of Accenture's unlawful and willful age discrimination against her, Holm has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

157.    Accenture's unlawful and willful age discrimination against Holm was done with deliberate disregard for Holm's rights under the MHRA and ADEA and, as a direct and proximate result, she has suffered mental anguish for which she seeks recovery under the MHRA.

158.    Accenture discriminated against Gardocki because of his age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Gardocki's employment in 2009 in whole or in part due to his age.

159.    As a direct and proximate result of Accenture's unlawful and willful age discrimination against him, Gardocki has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

160.    Accenture's unlawful and willful age discrimination against Gardocki was done with deliberate disregard for Gardocki's rights under the MHRA and ADEA and, as a direct and proximate result, he has suffered mental anguish for which he seeks recovery under the MHRA.

161.    Accenture discriminated against Jacobsen because of his age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Jacobsen's employment in 2009 because of his age.

162.    As a direct and proximate result of Accenture's unlawful and willful age discrimination against him, Jacobsen has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

163.    Accenture's unlawful and willful age discrimination against Jacobsen was done with deliberate disregard for Jacobsen's rights under the MHRA and ADEA and, as a direct and proximate result, he has suffered mental anguish for which he seeks recovery under the MHRA.

164.    Accenture discriminated against Vahhaji because of his age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Vahhaji's employment in 2009 because of his age.

24

165. As a direct and proximate result of Accenture's unlawful and willful age discrimination against him, Vahhaji has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

166. Accenture's unlawful and willful age discrimination against Vahhaji was done with deliberate disregard for Vahhaji's rights under the MHRA and ADEA and, as a direct and proximate result, he has suffered mental anguish for which he seeks recovery under the MHRA.

167. Accenture discriminated against Graven because of his age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Graven's employment in 2009 because of his age.

168. As a direct and proximate result of Accenture's unlawful and willful age discrimination against him, Graven has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

169. Accenture's unlawful and willful age discrimination against Graven was done with deliberate disregard for Graven's rights under the MHRA and ADEA and, as a direct and proximate result, he has suffered mental anguish for which he seeks recovery under the MHRA.

170. Accenture discriminated against Saign because of her age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating Saign's employment in 2009 because of her age.

171. As a direct and proximate result of Accenture's unlawful and willful age discrimination against her, Saign has suffered damages in an amount to be determined at trial,

including, but not limited to, lost salary, bonuses, and other forms of compensation, lost

retirement benefits, insurance benefits and other employee benefits.

172.    Accenture's unlawful and willful age discrimination against Saign was done with

deliberate disregard for Saign's rights under the MHRA and ADEA and, as a direct and

proximate result, she has suffered mental anguish for which she seeks recovery under the

MHRA.

173.    Accenture discriminated against Hetterick because of his age in willful violation

of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by

terminating Hetterick's employment in 2009 because of his age.

174.    As a direct and proximate result of Accenture's unlawful and willful age

discrimination against him, Hetterick has suffered damages in an amount to be determined at

trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost

retirement benefits, insurance benefits and other employee benefits.

175.    Accenture's unlawful and willful age discrimination against Hetterick was done

with deliberate disregard for Hetterick's rights under the MHRA and ADEA and, as a direct and

proximate result, he has suffered mental anguish for which he seeks recovery under the MHRA.

**COUNT THREE**

**DECLARATORY JUDGMENT:**

**OLDER WORKERS BENEFIT PROTECTION ACT - ADEA**

176.    Plaintiffs incorporate herein by reference all of the above paragraphs.

177.    This is a representative action under 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b)

by the above-named Plaintiffs and other similarly situated persons who opt into this action.

178.    Accenture sought to obtain releases of age discrimination claims from the above-named Plaintiffs and other similarly situated employees without complying with the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f).

179.    The proffered releases violated the OWBPA because they were deficient for several reasons including, but not limited to, (i) not being written with language that a lay person could understand, (ii) failing to properly identify the "decisional unit" for the terminations, (iii) failing to provide the minimum time periods for a group termination that each recipient had to consider the release, and (iv) failing to accurately identify the job titles and age of those employees selected for termination and retention.

180.    The above-named Plaintiffs and others similarly situated were adversely affected by Accenture's failure to comply with the Older Workers Benefit Protection Act.

181.    The above-named Plaintiffs and other similarly situated employees are entitled to a declaration from the Court that Accenture failed to comply with the Older Workers Benefit Protection Act in seeking and obtaining releases of age discrimination claims and that, as a result, any such releases are invalid.

## COUNT FOUR

## AGE DISCRIMINATION – DISPARATE IMPACT – ADEA & MHRA

182.    Plaintiffs incorporate herein by reference all of the above paragraphs.

183.    This is a representative action under 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b) by the above named Plaintiffs and other similarly situated persons who opt into this action by filing an appropriate notice.

184.    As set forth more fully above, Accenture has utilized practices, policies and procedures that have disparately impacted the above named Plaintiffs and other similarly situated

present and former employees of Accenture in the IT department and other departments or units, resulting in an unlawful pattern or practice of age discrimination in violation of the ADEA, 29 U.S.C. § 621, *et seq.*

185.    The above-named Plaintiffs and others similarly situated were disparately impacted by the discriminatory practices, policies and procedures of Accenture.

186.    As set forth more fully above, Accenture has utilized practices, policies and procedures that have also disparately impacted each of the above-named Plaintiffs because of his or her age in violation of the ADEA and the MHRA.

187.    As a direct and proximate result of the aforesaid age discrimination by Accenture, each of the Plaintiffs has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits, and damages for mental anguish and suffering.

## JURY DEMAND

188.    The Plaintiffs demand a trial by jury.

**WHEREFORE,** the Plaintiffs request that the Court enter judgment in their favor and against Accenture as follows:

1.    Awarding each of the Plaintiffs back pay and benefits, together with interest thereon;

2.    Restoring each of the Plaintiffs to positions comparable to the ones from which they were terminated or demoted or, in lieu of reinstatement, awarding each Plaintiff front pay and benefits for the period remaining until that person's expected retirement age;

3.    Awarding each of the Plaintiffs liquidated damages pursuant to the ADEA in an amount equal to that person's back pay and benefits award, together with interest thereon;

4.      Awarding each of the Plaintiffs all other remedies recoverable under the MHRA, including compensatory damages, exemplary damages, damages for mental anguish and suffering, treble damages and punitive damages;

5.      For a declaration that the releases of age discrimination claims obtained by Accenture from persons similarly situated to the Plaintiffs are invalid as a matter of law;

6.      Awarding Plaintiffs attorney fees and costs pursuant to 29 U.S.C. §§ 216(b) and 626(b); and Minn. Stat. § 363.1, subd. 3;

7.      Awarding a statutory civil penalty pursuant to the MHRA.

8.      Awarding Plaintiffs prejudgment interest and their costs and disbursements herein; and

9.      Awarding Plaintiffs such other and further relief as the Court deems equitable, appropriate and just.

**SNYDER & SNYDER, P.A.**

Dated:  April 23, 2010

_____
Stephen J. Snyder (#103019)
Brent C. Snyder (#034879X)
100 South Fifth Street, Suite 410
Minneapolis, MN  55402
(612) 787-3100 (telephone)
(612) 333-9116 (facsimile)

**ATTORNEYS FOR PLAINTIFFS**