UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Patrick Hageman, et al. for an on behalf
of themselves and other persons similarly
situated,

                Plaintiffs,

Civ. No. 10-1759 (RHK/FLN)
**MEMORANDUM OPINION
AND ORDER**

v.

Accenture LLP,

                Defendant.

Brent C. Snyder, Stephen J. Snyder, Snyder & Snyder, P.A., Minneapolis, Minnesota, for Plaintiffs.

Tracy M. Billows, Seyfarth Shaw, LLP, Chicago, Illinois, and Mara R. Thompson, Sprenger & Lang PLLP, Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

Hageman and thirteen other named Plaintiffs ("Plaintiffs") have brought a collective action against Defendant Accenture, LLP ("Accenture"), on behalf of themselves and others similarly situated. As former employees of Accenture, all allege that the company violated the Age Discrimination in Employment Act ("ADEA"). In Count III of their Complaint, Plaintiffs seek a declaratory judgment that the releases of claims Accenture sought from putative class members were invalid for failure to comply with the requirements of the Older Workers Benefit Protection Act ("OWBPA"), 29

U.S.C. § 216(b).  Accenture now moves to dismiss this claim.  For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

Each named Plaintiff was employed by Accenture to work in the IT Department at Best Buy's headquarters in Richfield, Minnesota.[1]  In April 2009, each received a termination notice.  At the time of their terminations, Plaintiffs' ages ranged from 43 to 64.  Plaintiffs filed administrative charges with the EEOC in late 2009, alleging that Accenture had discriminated against them on the basis of age.  Plaintiffs claim that Accenture engaged in a pattern or practice of age discrimination, emphasizing its "young, dynamic work environment" while failing to promote, refusing to transfer, and illegally firing older employees.  (Compl. ¶¶ 36–42.)

According to Plaintiffs, Accenture illegally terminated numerous employees on the basis of age between April 2009 and February 2010.  During this period, 72% of the employees terminated from Accenture's Best Buy IT unit were over age 40, and the termination rate for that age group was more than double the rate for employees under age 40.  (Id. ¶ 46.)  In particular, Plaintiffs allege that 47 of the 73 employees terminated as part of a reduction in force ("RIF") in April and May of 2009 were over age 40.  (Id. ¶¶ 44, 45.)

In connection with this RIF, Accenture offered each former employee a severance

---

[1] To be clear, Plaintiffs were employed by Accenture even though they worked on-site at Best Buy's headquarters.  Accenture is a "management consulting, technology services and outsourcing company."  (See http://www.accenture.com/Global/About_Accenture/default.htm) (last visited September 20, 2010).)

package, which included a release the employee was required to sign before receiving termination benefits (the "Release"). (Id. ¶ 50.) This Release waives any claims the former employee might have had against Accenture, including claims for age discrimination under the ADEA. Notably, there is no allegation in the Complaint that any named Plaintiff executed the Release. Three of the named Plaintiffs appear to have initially signed it. However, one of the three Plaintiffs never returned her signed Release to Accenture; the two others later timely rescinded their signed Releases. Accordingly, none became effective. (Snyder Aff. ¶¶ 2, 4, 5 & Exs. 1, 3, 4.) Plaintiffs do, however, identify two recent opt-in plaintiffs who purportedly signed Releases, returned them to Accenture, and did not later rescind them. (Snyder Aff. ¶¶ 3, 6 & Exs. 2, 5.)

Plaintiffs commenced this representative action in April 2010, asserting a claim for age discrimination on behalf of themselves and all others similarly situated, as well as ADEA and Minnesota Human Rights Act ("MHRA") claims on behalf of each named Plaintiff individually. In addition, Count III of Plaintiffs' Complaint seeks a declaration that Accenture's Releases violated the OWBPA and were thus invalid. Accenture now seeks dismissal of Count III of Plaintiffs' Complaint.

## STANDARD OF REVIEW

The Supreme Court set forth the standard courts are to apply when evaluating a motion to dismiss under Rule 12(b)(6) in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 547. A "formulaic recitation of the elements of a cause of action" is not sufficient. Id. at 555. Instead, there must be sufficient facts set

forth in the complaint to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 570.

For purposes of a motion to dismiss, the Court takes all facts alleged in the Complaint as true. Id. at 555–56. The Complaint must be construed liberally. Twombly, 550 U.S. at 554–56. Any allegations or reasonable inferences arising from the Complaint must be interpreted in the light most favorable to Plaintiffs. Id.

## ANALYSIS

As a threshold matter, the Court notes that the Releases Plaintiffs have submitted with their responsive brief fall within the realm of extra-pleading material properly considered for purposes of this Motion. When deciding a motion to dismiss, a court generally considers only the complaint and documents whose contents are alleged in the complaint and not disputed. Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003). The Court may also consider extra-pleading material "necessarily embraced by the pleadings." Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. of Pittsburgh, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (Tunheim, J.). The Releases here are documents "necessarily embraced by the pleadings" and are referenced therein. Id.

Turning to the substance of the Motion, Accenture raises two arguments: (1) Plaintiffs lack standing to raise their OWBPA claim because none of the named Plaintiffs signed (and returned and did not rescind) the Release now challenged, and (2) regardless of whether Plaintiffs have standing, the OWBPA does not provide an independent cause of action. Because the Court concludes that Plaintiffs lack standing, it need not address Accenture's second argument.

4

By way of background, the OWBPA "governs the effect under federal law of waivers or releases on ADEA claims." Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427 (1998). It does so by laying out specific minimum requirements that must be included in a release for it to be considered "knowing and voluntary" (and therefore valid). 29 U.S.C. § 626(f). Accenture argues that the named Plaintiffs lack standing to assert OWBPA claims because none of the fourteen actually executed (i.e., signed, returned, and did not later rescind) the Releases they are challenging. To have standing, as required by Article III of the Constitution, there must be "injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). None of the fourteen named Plaintiffs can show a cognizable injury. Simply being offered a Release but not validly executing it causes no injury and thus cannot establish standing to assert an OWBPA violation, even if the Release ran afoul of that statute. See Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 72–73 (3d Cir. 1996) (holding that plaintiff "suffered no injury cognizable under the OWBPA" because he never signed the termination agreement offered to him).

Plaintiffs argue that the presence of some opt-in plaintiffs who *did* sign Releases gives them standing collectively to challenge the validity of the Releases. (Mem. in Opp'n at 12.) This, however, does not cure the standing defect in Plaintiffs' claim. "[E]ven named plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the

5

class to which they belong and which they purport to represent." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) (emphasis added) (internal quotations omitted); accord Avritt v. Reliastar Life Ins. Co., --- F.3d ---, 2010 WL 3168453, at *8 (8th Cir. Aug. 12, 2010) ("The constitutional requirement of standing is equally applicable to class actions."). In other words, "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs." Allee v. Medrano, 416 U.S. 802, 828 (1974) (Burger, J., concurring in part) (citing O'Shea v. Littleton, 414 U.S. 488, 494 (1974)).[2]

Plaintiffs also argue that because this is a *collective* action under the ADEA, rather than a Rule-23 *class* action,[3] the standing principles applicable to class actions should not control. It is true that some of "the rules and policies underlying 'opt out' class actions

---

[2] Plaintiffs also argue that the standing requirement is lower here because the claim at issue is for declaratory relief. They rely on Horne v. Firemen's Retirement System of St. Louis, which states that "[t]he essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action." 69 F.3d 233, 236 (8th Cir. 1995) (quoting United States v. Fisher-Otis Co., 496 F.2d 1146, 1151 (10th Cir. 1974)). While this is true, it does not remedy the standing defect here. The plaintiff in Horne, who had suffered only a threatened harm, alleged discrimination only on his own behalf. Id. at 236. Here, the named Plaintiffs do not allege a threatened harm to themselves; they allege an actual, completed injury to *other* putative class members that they do not share. The general rules regarding standing in class actions apply here to preclude Plaintiffs from bringing this claim.

[3] The ADEA adopted § 216(b) of the Fair Labor Standards Act, which allows plaintiff(s) to maintain a so-called "opt-in" collective action for age-discrimination claims, rather than a class action under Fed. R. Civ. P. 23. See 29 U.S.C. § 626(b) (stating that the ADEA shall be enforced in accordance with 29 U.S.C. § 216(b)). In a Rule-23 class action, all potential class members are part of the case unless they affirmatively opt out. Section 216(b), on the other hand, provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

6

may not apply when construing the FLSA." Whalen v. United States, 85 Fed. Cl. 380, 383 (Fed. Cl. 2009). In the Court's view, however, the Constitutional requirement of standing is no less stringent for collective actions than it is for Rule-23 class actions. See Lucas v. BMS Enters., Inc., Civ. No. 09-2159, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010) ("The standing requirement is no different in a collective action suit [than in a Rule-23 class action]. . . . The court therefore holds that a named plaintiff in a collective action has adequately pleaded standing against a particular defendant *only if* the plaintiff has alleged an injury that the defendant caused *to him*.") (emphasis added); Martinez v. Cargill Meat Solutions, 265 F.R.D. 490, 497 (D. Neb. 2009) (noting in an FLSA collective-action case that "[a] named party is not a proper representative of the class as to those claims for which he himself lacks standing") (quoting Hall v. Lhaco, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998)).

A recent Eastern District of Virginia decision directly addressed the issue of whether plaintiffs who had not signed releases had standing to maintain a collective action alleging that those releases violated the OWBPA. In Merritt v. WellPoint, Inc., 615 F. Supp. 2d 440 (E.D. Va. 2009), the two named plaintiffs (neither of whom signed the release at issue) purported to represent two sub-classes—one of individuals who had signed the releases and the other of those who had not. Id. at 443. The defendant argued, as Accenture does here, that the named plaintiffs had suffered no injury-in-fact and lacked standing to represent those who had signed the releases. Id. at 447. On the issue of standing, the Merritt court reasoned:

7

> To be injured and have standing under the OWBPA, [plaintiffs] must have *signed* the waiver. Because Plaintiffs suffered no injury, they cannot assert standing to represent those who may have suffered injury under the OWBPA, Sub-Collective B [those who *did* sign the release]. It may be true that Defendant violated the OWBPA by not providing the statutorily required type of notice or allowing the proper amount of time to elapse for consideration, as Plaintiff suggests, but without suffering any real injury under the OWBPA, Plaintiffs are not in a position to assert rights on behalf of Sub-Collective B. For these reasons, the Motion to Dismiss Count III [the claim for violation of the OWBPA waiver requirements] for lack of standing is granted because Plaintiffs have suffered no injury and cannot represent the sub-class of employees who may have suffered injury, or as discussed above, those who suffered no injury under the OWBPA.

Id. at 447. The Court concurs with this reasoning and reaches the same decision here.[4] The named Plaintiffs in this action lack standing to bring the OWBPA claim asserted in Count III because none executed an effective Release. In the absence of a Plaintiff with standing, the Court will grant Accenture's Motion.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Accenture's Motion to Dismiss Count III of the Complaint (Doc. No. 13) is **GRANTED**, and Count III of Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE.**

Dated: September 21, 2010

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[4] Contrary to Plaintiffs' attempt to distinguish Merritt at oral argument, the case is exactly on point here. It arose when the defendant moved to dismiss an OWBPA claim in the plaintiffs' complaint under Rule 12(b)(6). The defendant in Merritt argued, as Accenture argues here, that the plaintiffs lacked standing to bring the OWBPA claim because the named plaintiffs had not signed the challenged waivers. Merritt, 615 F. Supp. 2d at 443.