**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Patrick Hageman, Julie Engel, Susanne
Smith, Gary Stroick, Bruce McKeeman,
Brenda Dammann, Charlaine Ramsay,
Lori Holm, Christopher Gardocki, Paul
Jacobsen, Cyrus Vahhaji, Patrick Graven,
Patricia Saign, John Hetterick, Jacqueline
Williams, Stephen Ripley, and Gregory
Timm, on behalf of themselves and other
persons similarly situated,

                     Plaintiffs,

                                                   Civ. No. 10-1759 (RHK/FLN)
                                                   **MEMORANDUM OPINION
                                                   AND ORDER**

v.

Accenture LLP,

                     Defendant.

---

Craig A. Brandt, Stephen J. Snyder, Snyder & Brandt, P.A., Minneapolis, Minnesota, for
Plaintiffs.

Gerald L. Maatman, Jr., Seyfarth Shaw LLP, Chicago, Illinois, for Defendant.

---

**INTRODUCTION**

In this employment-discrimination action, 17 former employees ("Plaintiffs") of

Defendant Accenture, LLP ("Accenture") allege that they and others similarly situated

were terminated in violation of the Age Discrimination in Employment Act ("ADEA"),

29 U.S.C. § 621 *et seq.* Plaintiffs moved for authorization to send notice to other

potential class members, and Magistrate Judge Franklin L. Noel granted their Motion.

Accenture now objects to Judge Noel's Order. For the reasons set forth below, the Court will overrule the Objections, conditionally certify the class, and affirm the authorization of class notice.

## BACKGROUND

Each named Plaintiff was employed by Accenture to work in the IT department of Best Buy's headquarters in Richfield, Minnesota.[1] Between April 2009 and early 2010, each received notice that his or her employment was being terminated. At the time they were terminated, Plaintiffs' ages ranged from 43 to 64. Accenture provided Plaintiffs with disclosures outlining the scope of the workforce reduction and containing a list of the job titles and ages of employees selected for termination (as required by the Older Workers Benefit Protection Act), as well as information about separation benefits. There were at least two versions of these disclosures. The earlier version, received by employees whose jobs were terminated in May 2009, referred to a "workforce reduction" and provided that "[t]he scope of the United States workforce reduction included all Best Buy IT Outsourcing Unit employees." (Brandt Aff. Exs. 3, 15.) Employees terminated in November 2009 and early 2010 received a different disclosure, entitled a "Notice to Employees Terminated as Part of a Group Termination," which explained that the "separation program has been ongoing." (Id. Exs. 5, 18, 23.)

Fifteen Plaintiffs filed administrative charges with the EEOC, alleging that Accenture had discriminated against them and others similarly situated on the basis of

---

[1] Plaintiffs were employed by Accenture even though they worked on-site at Best Buy. Accenture is a "management consulting, technology services and outsourcing company." See http://www.accenture.com/Global/About_Accenture/default.htm) (last visited March 28, 2011).

2

age.[2]  They claim that Accenture engaged in a pattern or practice of age discrimination, emphasizing its "young, dynamic work environment" while failing to promote, refusing to transfer, and ultimately terminating the jobs of older employees, often replacing them with younger workers.  (3rd Am. Compl. ¶¶ 41–47.)  According to Plaintiffs, Accenture wrongfully terminated numerous employees' positions in its Best Buy Unit on the basis of age during 2009 and 2010.  (Id. ¶¶ 58–59.)

Plaintiffs commenced this action in April 2010.  Accenture moved to bifurcate discovery into two phases—first, to investigate issues related to collective-action certification and, second, to investigate the specific facts underlying the claims.  That motion was denied in September 2010.  (See Doc. No. 52.)  Accordingly, discovery has proceeded in one stage and is currently scheduled to close on April 1, 2011; however, the parties recently filed a Stipulated Joint Motion to Modify the Pretrial Schedule (Doc. No. 110), in which they request an extension of discovery until August 1, 2011.  That Motion is under advisement pending the resolution of the instant Objections.  (See Doc. No. 111.)

In December, Plaintiffs brought a Motion to Authorize Notice (Doc. No. 79) pursuant to Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1998).  Their Motion did not expressly seek conditional certification of a collective action, nor had a class been previously certified.  However, both parties and Judge Noel appear to have treated the authorization of notice as implicitly conditionally certifying a class.  The Motion was

---

[2] Plaintiffs Jacqueline Williams and Stephen Ripley, who were added as named Plaintiffs in this action on November 8, 2010, did not file separate administrative charges with the EEOC.  The Third Amended Complaint (the most recent and now-operative pleading) alleges that Williams and Ripley "are piggybacking on the class-wide charges filed by the other Plaintiffs in this action." (3rd Am. Compl. ¶ 38.)

3

briefed and argued before Judge Noel and subsequently granted by an Order dated January 25, 2011. (Doc. No. 91).[3] Accenture now objects to that Order in its entirety and asks this Court to review it *de novo*.

## STANDARD OF REVIEW

For the reasons set forth in this Court's February 18, 2011, Order (Doc. No. 103), the Court will review the Order authorizing notice *de novo*.

Employees may bring ADEA claims against their employer in a collective action. See 29 U.S.C. § 626(b). The ADEA is enforced pursuant to § 216 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, which sets forth employees' right to proceed collectively. See id. (incorporating § 216 of the FLSA). Accordingly, an action under the ADEA may be brought "by any one or more employees" on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a Rule-23 class action, however, no employee is a party to a collective action unless "he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (Kyle, J.) (quoting 29 U.S.C. § 216(b)). This giving and filing of consent is known as the "opt-in" process. See West v. Border Foods, Inc., No. 05-2525, 2006 WL 1892527, at *2 (D. Minn. July 10, 2006) (Frank, J.) (adopting Report & Recommendation of Erickson, M.J.).

---

[3] Accenture's Motion to Stay the Order pending this Court's review of its objections was granted, and the Order was temporarily stayed. (See Doc. No. 97.)

The fundamental inquiry in determining whether a collective action is appropriate under § 216(b) is whether plaintiffs are similarly situated. Heartland Auto., 404 F. Supp. 2d at 1149. However, the term "similarly situated" is not defined in the FLSA (or the ADEA), "and there is little circuit law on the subject." West, 2006 WL 1892527, at *2; accord Heartland Auto., 404 F. Supp. 2d at 1149. The Court must determine on a "case by case basis" whether plaintiffs are similarly situated such that collective-action treatment is appropriate. Ray v. Motel 4 Operating, Ltd. P'ship, No. 3-95-828, 1996 WL 938231, at *3 (D. Minn. Mar. 18, 1996) (Kyle, J.).

Courts have developed a two-stage process to determine whether a collective action is appropriate. E.g., Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (Davis, J.); Kalish v. High Tech Inst., Inc., No 04-1440, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005) (Tunheim, J.). At the first stage, or the "notice stage," the plaintiffs seek conditional certification for the purposes of sending notification to other putative class members and conducting discovery. Conditional certification is granted based on an initial finding that the plaintiffs and others they purport to represent are similarly situated as required by § 216(b). The plaintiffs bear the burden of showing that they are similarly situated. Heartland Auto., 404 F. Supp. 2d at 1149. However, "[a]t this stage, plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." Burch, 500 F. Supp. 2d at 1186 (citations omitted). Granting conditional certification and authorizing notice allows plaintiffs to proceed as a class through discovery. Id. The second stage occurs after discovery, usually when the defendant moves to decertify the

class. E.g., Ray, 1996 WL 938231, at *2. At that stage, the Court applies a stricter standard and makes a factual determination whether the plaintiffs are indeed similarly situated based on more complete evidence. Id.

## ANALYSIS

At the outset, the Court must determine what standard to apply. "Determination of class status at the notice stage is often liberally authorized since the court has minimal evidence for analyzing the class." Ray, 1996 WL 938231, at *2 (citing Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 279 (D. Minn. 1992)). Accenture argues, however, that a stricter standard should apply here because much discovery has already been conducted. But belying this argument is the parties' recently filed Stipulated Joint Motion to Modify the Pretrial Schedule, in which Accenture agrees that there have been significant delays in the discovery process and "substantial discovery remains to be completed."[4] (Doc. No. 110 at 3.) Simply put, while discovery has been ongoing, it is not yet complete. Even in cases where the parties have engaged in some discovery, courts routinely analyze motions for certification under the first-stage standard of review. See West, 2006 WL 1892527, at *3 ("[T]he discovery process has not been completed and, as such, we analyze the Plaintiff's Motion under the initial stage of review.")

---

[4] In their Stipulated Joint Motion, the parties state that Plaintiffs have yet to take 20 or more depositions, Accenture needs to depose some Plaintiffs, and additional document production is needed. (See Doc. No. 110 at 3.) Further, they explain that there has been an "unanticipated delay" in producing documents, and as of early January (after Plaintiffs' originally filed their Motion to Authorize Class Notice), Accenture had yet to begin producing electronic documents. This is consistent with Plaintiffs' assertions at the time they filed their Motion to Authorize Class Notice that they had only completed two depositions and were "frustrated" with Accenture's responses to their discovery requests. (See Mem. in Opp'n to Objs. at 8.)

(quoting Heartland Auto., 404 F. Supp. 2d at 1149).  Hence, the Court will apply a first-stage analysis here.

Plaintiffs must show only a "colorable basis" to achieve conditional certification under the first stage of review.  E.g., West, 2006 WL 1892527, at *3; Ray, 1996 WL 938231, at *2.  "A colorable basis means that plaintiff[s] must come forward with something more than the mere averments in [their] complaint in support of [their] claim." Kalish, 2005 WL 1073645, at *2.  Here, Plaintiffs assert that they and other putative class members are similarly situated because all were employees of Accenture within the company's Best Buy Unit in Richfield, Minnesota, all were employed in the Information Technology ("IT") department, most (if not all) were in the "Services" workforce within the IT department, all were terminated between May 2009 and April 2010, and all were over 40 years of age at the time of their terminations.

Plaintiffs do not rely solely on their Complaint to support these assertions.  Rather, they submit numerous deposition excerpts and documents.  (See Brandt. Aff. Exs. 3–25.) This evidence supports the assertion that all Plaintiffs were employed in a single department at a single location.  It further suggests that the terminations spanning 2009 and 2010 were part of a "workforce reduction" and a "separation program [which was] ongoing."  (Id. Exs. 3, 4, 15, 18, 23.)  Plaintiffs also offer deposition testimony about an e-mail sent by a Best Buy board member and CIO outlining a four-year reorganization plan for the Unit, which was accidentally received by Plaintiff Bruce McKeeman.  (Id. Ex. 10 (McKeeman Dep.) at 115–19.)  Additionally, they provide statements from Accenture's careers website touting its "young, dynamic work environment" and

7

opportunities to "meet new graduates and young professionals" in its offices. (Id. Ex. 11.) Considering Plaintiffs' minimal burden at the first stage, this evidence is sufficient to establish a colorable basis for their claim that they are similarly situated.

Accenture argues that Plaintiffs failed to show that conditional certification is appropriate for a number of reasons. (See Def. Objs. at 6–8.) First, it argues that a collective action would be unmanageable because Plaintiffs' claims involve fact-intensive inquiries and individualized defenses. This analysis is more properly conducted at the second stage, once discovery is complete. See, e.g., West, 2006 WL 1892527, at *3 ("At the second stage, the court conducts a fact intensive inquiry of several factors, including: (1) the extent and consequence of *disparate factual and employment settings* of the individual plaintiffs; [and] (2) the *various defenses* available to defendant which appear to be individual to each plaintiff.") (emphasis added).[5] Thus, the Court will not delve into it here. Furthermore, the limited size and scope of the proposed class (fewer than 100 employees, terminated from one department at one location) alleviates many manageability concerns that might otherwise give the Court pause.

Accenture next argues that Plaintiffs have failed to produce any evidence of a single policy or plan. Even under the lenient first-stage burden, certification may be denied where there is insufficient evidence of a common plan or policy to show that a class of similarly situated individuals exists. E.g., Saleen v. Waste Mgmt., Inc., 649

---

[5] In support of its argument, Accenture cites Mooney v. Aramco Services Co., 54 F.3d 1207, 1214–15 (5th Cir. 1995), overruled on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). However, Mooney affirmed the *decertification* of a collective action based upon the plaintiffs' disparate employment situations and the defendant's individualized defenses, thus bolstering the conclusion that such factors are more properly considered at the second stage.

F. Supp. 2d 937, 943 (D. Minn. 2009) (Schiltz, J.); West, 2006 WL 1892527, at *9. Plaintiffs allege that they were all terminated as part of a common, ongoing workforce reduction, and this is supported by the disclosures they received from Accenture, which specifically refer to a "workforce reduction" and "ongoing" "separation program." (See Brandt Aff. Exs. 3, 4, 15, 18, 23.) This suggests a common policy or plan.

Moreover, the instant case differs markedly from previous cases in which this Court has denied conditional certification for failure to show a common policy or plan because the putative class here consists of only about 67 additional former Accenture employees who were employed in a single unit at a single location. See, e.g., Saleen, 649 F. Supp. 2d at 942 (plaintiffs sought certification of a class of "tens of thousands of employees . . . at hundreds of different locations throughout the United States."); Ray, 1996 WL 938231, at *4 (plaintiffs who had already joined the action were from five regions spanning at least thirty-nine properties in twenty different states). Rather than encompassing individuals across numerous physical locations, the putative class here is limited to one location and fewer than 100 employees. See Lyons v. Ameriprise Fin., Inc., Civ. No. 10-503, 2010 WL 3733565, at *4 (D. Minn. Sept. 20, 2010) (Kyle, J.) (rejecting defendant's argument that there was insufficient evidence of a single policy or plan where the class was limited to one call center and a few hundred employees). Hence, it is more likely that Plaintiffs and putative class members were subject to a common policy or plan. Combined with the documents and testimony set forth above, this is sufficient to satisfy Plaintiffs' burden at this stage.

Accenture also argues that Plaintiffs fail to satisfy the similarly-situated requirement due to factual differences in their employment situations, the decisions that led to their terminations, and Accenture's potential defenses to each Plaintiff's claims. For the reasons previously stated, however, these are factors more properly considered at the second stage upon a motion for decertification, after discovery is completed.

Finally, Accenture argues that Plaintiffs have not shown that conditional certification is appropriate because they lack standing to pursue the Older Workers' Benefit Protection Act claim in Count III of their Third Amended Complaint. (Def. Objs. at 8.) It asserts that Williams and Ripley—who were added as named Plaintiffs in order to cure the standing defect that was the subject of an earlier Motion to Dismiss (see Doc. No. 53)—cannot "piggyback" on the EEOC charges filed by the other Plaintiffs with respect to this claim and thus lack standing to assert it. (See Def. Mem. at 36–37.) While there may be merit to this argument, it has no bearing on the propriety of conditional certification or authorization of class notice, and the Court need not resolve it at this juncture. Even if Count III were dismissed, the other claims in the case would remain, and Valspar acknowledged at the March 25, 2011, hearing on its Objections that nothing about the scope of the proposed class or the notice would differ due to the presence or absence of Count III.

Having determined that conditional certification is appropriate, the only remaining question is whether Judge Noel properly authorized transmittal of notice to potential class members. "Courts may facilitate the opt-in process by 'authorizing the named Plaintiffs . . . to transmit a notice [of the lawsuit] to potential class members.'" Dominquez v.

10

Minn. Beef Indus., Inc., Civ. No. 06-1002, 2007 WL 2422837, at *2 (quoting West, 2006 WL 1892527, at *2); accord Hoffman-LaRoche, 493 U.S. at 170.  The power to authorize notice is discretionary and should be exercised only in "appropriate cases"—that is, in cases where the plaintiffs can make a threshold showing that they are similarly situated. Dominquez, 2007 WL 2422837, at *2 (quoting West, 2006 WL 1892527, at *2).  As set forth above, Plaintiffs have made such a showing here.

That said, the Court will briefly address Accenture's arguments about the contents of the notice and the scope of the class to which it may be sent.  Judge Noel's Order authorizes notice to "all persons (other than current Plaintiffs) who, in 2009 and 2010, were involuntarily terminated (or forced to resign or retire) by [Accenture] from employment with Accenture at the Best Buy headquarters in Richfield, Minnesota."  (See January 25, 2011, Order ¶ 2.)  Accenture argues this class is too broad and should instead be limited to people terminated as part of a reduction in force since Plaintiffs assert they were all terminated as part of a common workforce reduction.  (See Def. Objs. at 9.)  Plaintiffs respond that it is not yet clear who was included in the reduction, and Accenture should not be allowed to make that determination.  (See Tr. of Hearing before Noel, M.J., at 25–26.)  While the class delineated is not expressly limited to employees who were terminated as part of a reduction, it is limited to employees in a single unit at a single location who were terminated within a two-year span.  Moreover, both sides agree that the class will include only about 67 people in addition to current Plaintiffs.  In the Court's view, this class definition is sufficiently narrow.

11

Second, Accenture argues that the notice should include the names and contact information of its counsel as well as Plaintiffs' counsel.  (See Def. Mem. at 38.)  "This issue has been considered by several courts, which have disagreed on whether defense counsel should be identified."  Ahle v. Veracity Research Co., Civ. No. 09-0042, 2009 WL 3103852, at *6 (D. Minn. Sept. 23, 2009) (Montgomery, J.) (collecting cases).  This Court sees no good reason for including defense counsel's contact information on the notice.  See id. ("The Court finds the decisions that have questioned any possible utility that could be gained by identifying defense counsel to be more soundly reasoned."); Cryer v. Intersolutions, Inc., No. 06-2032, 2007 WL 1053214, at *3 (D.D.C. Apr. 7, 2007) ("The Court sees no reason to include defense counsel on the class notice.  Defense counsel does not play a role in managing the distribution of the notice or the gathering of consent forms.  Including additional lawyers only creates the potential for confusion."); Gambo v. Lucent Techs., Inc., No. 05-3701, 2005 WL 3542485, at *7 (N.D. Ill. Dec. 22, 2005) ("[T]here is no basis in law or logic for this request [to include defense counsel's information].").  Accordingly, this objection will also be overruled.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1.     Accenture's Objections (Doc. No. 98) to Judge Noel's January 25, 2011 Order are **OVERRULED**, and the Order (Doc. No. 91) is **AFFIRMED**;

2.     The following class is **CONDITIONALLY CERTIFIED** and may be sent the notice authorized by Judge Noel's Order:

>All former Accenture employees who worked at the Best Buy Unit in Richfield, MN, in its IT-department, and who were involuntary terminated (or forced to retire or resign) in 2009 or 2010 and were over 40 years old at the time their employment was terminated;

and

3. Within **10 days** of the date of this Order, Accenture shall provide Plaintiffs' counsel the names and last-known addresses of all persons (other than current Plaintiffs) within the class defined in Paragraph 2 above.


Dated: March 31, 2011                               s/Richard H. Kyle
                                                    RICHARD H. KYLE
                                                    United States District Judge